# United States Bankruptcy Court
# Eastern District of Pennsylvania

In re:                                                    Case No. 25-14980-djb

    James Daly and Shannon P. Daly,                Chapter 13

               Debtors.                Amends ECF No. 13

**Debtors' First Amended Verified Motion for Sanctions for Violation of the Automatic Stay Directed to Santander Bank**

**AND NOW**, Debtors James Daly and Shannon P. Daly, through their attorney, move for the entry of an order imposing sanctions against Santander Bank (the "Creditor") for violating the automatic stay.

## I.    Jurisdiction

1.    The Court has jurisdiction under 28 U.S.C. § 1334 and the Standing Order of Reference (E.D. Pa. Nov. 8, 1990).

2.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

3.    The Debtors consent to the entry of a final order by this Court.

4.    Venue is proper under 28 U.S.C. § 1409.

## II.    Background

5.    The Debtors petitioned for relief under chapter 13 of the Bankruptcy Code on December 5, 2025.

6.    On or about March 1, 2024, the Debtors entered into a retail installment contract for purchase of a 2021 Nissan Kicks, VIN 3N1CP5DV0ML514826 (the "Vehicle"). The contract was assigned to the Creditor, and the Debtors remain indebted under its terms.

7.     The Debtors maintain the Vehicle for traveling to work and fulfilling other routine obligations and errands.

8.     At all times relevant to this motion, the Vehicle was properly insured through Progressive Advanced Insurance Company.

9.     On November 19, 2025, the Creditor repossessed the Vehicle due to payment default. Upon repossession, the Creditor sent the Debtors a notice stating that the Vehicle would be sold at auction if the arrearage was not cured on or before December 5, 2025.

10.     At all times relevant to this motion, the Debtors intended to file a chapter 13 plan that provides for cure of all pre-petition arrears owed to the Creditor, and to provide pre-confirmation adequate protection payments to the Creditor.

11.     When the Vehicle was repossessed, various personal property belonging to the Debtors was in it, including documents evidencing the Vehicle's registration and insurance.

12.     When the Vehicle was repossessed, a license plate issued by the Pennsylvania Department of Transportation and registered to the Debtors was affixed to the Vehicle's rear exterior.

13.     When the petition was filed, the Vehicle and all personal property within it became property of the estate under 11 U.S.C. § 541(a) and remained such at all times relevant to this motion.

14.     Upon information and belief, the Creditor caused the Debtors' personal property to be destroyed on or about December 5, 2025.

15.     Upon information and belief, the Creditor caused the license plate to be destroyed on or about December 5, 2025.

2

16.     Upon information and belief, when the petition was filed, the Vehicle was located at Manheim Philadelphia, an auction facility located at 3150 Bethlehem Pike in Hatfield, Pennsylvania (the "Auction Lot").

17.     On Friday, December 5, 2025, the Debtors provided the Creditor with notice of this bankruptcy case and demanded turnover of the Vehicle. At that time, the Creditor informed the Debtors that turnover would take twenty-four to forty-eight hours.

18.     On Monday, December 8, 2025, the Creditor informed the Debtors that the Vehicle was being moved from the Auction Lot to International Recovery Systems ("IRSREPO") at 2700 State Road in Bensalem, Pennsylvania (the "Agency Lot"), and that they should call Resolvion at 704-935-5700 to schedule pickup.

19.     On Tuesday, December 9, 2025, the Debtors called Resolvion to schedule pickup. Resolvion told them that they should call the Creditor instead to find out when the Vehicle would arrive at the Agency Lot. They then called the Creditor and were told it would arrive on or about Monday, December 15, 2025. To minimize delay, the Debtors asked if they could pick up the Vehicle from the Auction Lot, which the Creditor had told them was located in Philadelphia. The Creditor agreed and informed the Debtors that the Vehicle would be available for pickup at the Auction Lot on or about Thursday, December 11, 2025.

20.     On Thursday, December 11, 2025, the Creditor sent the Debtors a new release letter and instructed them to contact the Auction Lot to schedule pickup. Upon calling the Auction Lot, the Debtors discovered that it was located in Hatfield, not in Philadelphia as the Creditor had represented. Because Hatfield is further from the Debtors' residence, they did not have the funds necessary to obtain transportation there to pick up the Vehicle. The Debtors then contacted the

3

Creditor and asked that they be allowed to pick up the Vehicle at the Agency Lot, since it is closer to their home. The Creditor informed them that the Vehicle would be transported to the Agency Lot and would be available for pickup on or about Monday, December 15, 2025.

21.     On Monday, December 15, 2025, the Debtors called the Creditor to inquire about the status of the Vehicle. After placing the Debtors on hold for about an hour, the Creditor informed them that the Vehicle was at the Agency Lot, but there was a seven-day wait period before pickup would be allowed.

22.     On Monday, December 22, 2025, the Debtors called the Creditor again. After extended holds, the Creditor initially stated that the Vehicle was at the Agency Lot and ready for pickup. However, after further holds, the Creditor stated that the Vehicle was not yet processed, and that another seven-day wait period was required before pickup would be allowed.

23.     That same day, the Debtors called IRSREPO and were directed to schedule an appointment to pick up the Vehicle by visiting http://irsrepo.com. But when they attempted to do so, a message on the website informed them that pickup could not be scheduled online. They then called IRSREPO again but failed to reach a live agent.

24.     On Tuesday, December 23, 2025, the Debtors again attempted to schedule pickup online and by phone, but the website would not allow them to do so, and they could not reach a live agent over the phone.

25.     That same day, the Creditor informed the Debtors that the Vehicle was located at 701 Market Street, Unit 5400 in Philadelphia, and would be delivered to the Agency Lot later that day. The Philadelphia Parking Authority's administrative offices are located at the same address, and it is unclear why the Vehicle was parked there.

4

26.     On December 24, 2025, the Debtors filed this motion.

27.     On December 26, 2025, the Debtors reached an agent at IRSREPO by phone, and the agent informed them that the Vehicle was still located at the Auction Lot.

28.     Upon information and belief, the Vehicle remained at the Auction Lot at all times from December 5, 2025, until about January 5, 2026.

29.     Upon information and belief, the Creditor transported the Vehicle from the Auction Lot to the Agency Lot on or about January 5, 2026.

30.     On January 5, 2026, the Debtors were able to schedule pickup of their personal property at the Agency Lot but were told that they could not retrieve the Vehicle.

31.     On January 8, 2026, the Debtors arrived at the Agency Lot to pick up their personal property. They were told at that time that they could retrieve the Vehicle, and they did so.

32.     Upon retrieval of the Vehicle, the Debtors discovered that their personal property and the license plate were missing from the Vehicle.

33.     The Creditor's failure to return the license plate and registration and insurance documents with the Vehicle prevented the Debtors from lawfully operating the Vehicle from January 8, 2026, until about January 24, 2026.

34.     As an actual and proximate result of the Creditor's misconduct, the Debtors incurred actual damages, including, but not limited to, transportation, lost wages, towing and storage, lost property, emotional distress, and attorney's fees.

*[This space intentionally left blank.]*

5

35.     Additionally, the following sum certain damages were incurred by the Debtors as an actual and proximate result of the above circumstances:

     a.    Car rental expenses: $2,007

     b.    Rideshare expenses: $216

     c.    Lost wages: $876

## III.   Grounds For Relief

**A.     The Vehicle is property of the estate and was required to be turned over to the Debtors within a reasonable time.**

36.     When the petition was filed, the Vehicle became property of the Debtors' bankruptcy estate under 11 U.S.C. § 541(a).

37.     Under 11 U.S.C. § 542(a), an entity in possession of estate property must deliver that property to the trustee or debtor upon request, unless the property is of inconsequential value or benefit to the estate.

38.     The Vehicle is necessary for the Debtors' reorganization efforts because it is essential for transportation to work and other daily necessities.

39.     The Vehicle's necessity to the Debtors' reorganization gives it consequential value and benefit to the estate.

**B.     The Creditor's affirmative actions against the Vehicle and other property of the estate were willful violations of the automatic stay.**

40.     The filing of the petition operated as a stay of, among other things, "any act to . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

41.     After receiving notice of the petition and the Debtors' demand for turnover, the Creditor violated 11 U.S.C. § 362(a)(3) by affirmatively and repeatedly controlling, relocating, and

delaying access to the Vehicle by destroying the Debtors' personal property, and by repeatedly communicating inaccurate information to the Debtors.

42. This misconduct is willful within the meaning of 11 U.S.C. § 362(k) because the Creditor had actual notice of the bankruptcy and intentionally engaged in the conduct that violated the stay.

43. The Debtors were injured by the Creditor's willful violation of the stay and are entitled to recover actual damages.

## IV. Relief Requested

44. The Debtors request that the Court award actual damages for violation of the automatic stay in the amount of $10,000.

**FOR THOSE REASONS,** the Court must grant relief in the form of order attached, and further in the Debtors' favor if necessary and proper under the law.

Date: January 27, 2026

**SADEK LAW OFFICES LLC**
*Attorney for Debtors*

By: /s/ Michael I. Assad
    Michael I. Assad (#330937)
    1500 JFK Blvd., Suite 220
    Philadelphia, PA 19102
    215-545-0008
    michael@sadeklaw.com

## Verification

I, Shannon P. Daly, am a debtor in this bankruptcy case. I have read this motion and verify that all factual allegations therein are true and correct to the best of my knowledge, information, and belief. I verify under penalty of perjury that the foregoing is true and correct.

Date: January 27, 2026

/s/ Shannon P. Daly
Shannon P. Daly

7